**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CR241CEJ(MLM) |
| | ) | |
| SAMUEL BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on the pretrial Motions filed by defendant. On 6/10/05 an Evidentiary Hearing was held. This case is to be set for trial by the Honorable Carol E. Jackson.

1.      **Defendant's Motion to Suppress Statements  [Doc. 19]**

2.      **Defendant's Motion to Suppress Physical Evidence [Doc. 20]**

At the Evidentiary Hearing the government presented the testimony of Detective Leo Liston of the St. Louis Metropolitan Police Department. Based on testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witness, the court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

On January 25, 2005 Det. Liston presented an Application for a Search Warrant with an Affidavit in Support to the Honorable Donald L. McCullin of the 22nd Judicial Circuit. Gov. Ex. A. The Application was for a residence at 5315 Terry, Apartment B, Second Floor, which was fully described. The Application sought marijuana, crack cocaine, or any other illegal narcotic, United States currency, firearms, drug transaction records, safes and other instruments of crime. The Affidavit in Support described Det. Liston's credentials and indicated that on January 5, 2005 he was contacted by a Confidential Informant (CI) whom he and other officers had used on prior occasions. The information provided by the CI was reliable and resulted in two narcotics and gun related arrests, with warrants being issued by the City of St. Louis Circuit Attorney's Office.

The CI told Det. Liston that he/she was aware of an individual that he/she knows as "Sam" who sells crack cocaine. The CI described Sam as a black male, approximately 45 years of age, of dark complexion, 5'7" to 6' tall, medium build and approximately 150 to 180 pounds. The CI stated that Sam uses his residence at 5315 Terry, Apartment B, Second Floor to convert powder cocaine into crack. The CI stated that after Sam converts the powder cocaine into crack cocaine, he takes it to the area of Sullivan and Glasgow where he sells it. The Sullivan and Glasgow area is a high drug trafficking neighborhood where there have been numerous gun and drug related arrests in addition to shootings. This is a known area of the Beam Street Bloods street gang.

The CI stated that Sam drives a yellow 80's Cadillac bearing Missouri license 635WLK.

Det. Liston conducted a computer search of the license plate and it revealed the plate issued to a Samuel Brown, Jr. It showed Samuel Brown having an address of 2917 Sullivan. Det. Liston obtained Samuel Brown's pedigree information and photograph. It revealed a date of birth of 9/10/59, a Social Security Number of 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, a person of medium complexion, 5'10" tall and 160 pounds.[1] Det. Liston showed the CI the photo and he/she positively identified it as the person he knew as Sam.

Based on this information, Det. Liston conducted a series of three surveillances. On 1/14/05 at approximately 2:00 P.M. he conducted a one hour surveillance during which he observed a heavy amount of pedestrian and vehicular traffic to and from the residence at 5315 Terry. On 1/17/05 he conducted surveillance for one hour and again observed a heavy amount of foot and vehicular traffic to and from the Terry residence. He also conducted surveillance on 1/18/05 and while conducting a one hour surveillance he again observed a heavy amount of vehicular and pedestrian traffic at the 5315 Terry residence. In each instance he observed various subjects knock on the front door at 5315 Terry and be permitted in the residence by a dark-complected black male believed to be Samuel Brown. The subjects would then exit the residence minutes later and depart the area either on foot or in an awaiting vehicle. On that date at approximately 5:30 P.M., while in the area of North Grand

---

[1] Although defendant's pedigree information states that he is 5'10" and 160 pounds, defendant's counsel elicited on cross examination that Det. Liston would not disagree that defendant is 5'6".

and Cass conducting intermediate surveillances for drug activity, he observed a yellow Cadillac bearing license number 635WLK which was the plate issued to Samuel Brown. He saw the Cadillac travel north on Grand from Cass. He attempted a moving surveillance of the Cadillac but lost it in the area of Grand and Montgomery. He responded to the 2900 block of Sullivan and observed the Cadillac parked, unoccupied in front of 2918 Sullivan.

On 1/25/05 at approximately 10:00 A.M., the CI again contacted Det. Liston and stated that he had been inside the residence at 5315 Terry within the past twenty-four hours in the presence of Samuel Brown. The CI noted that defendant was packaging crack cocaine for distribution purposes in the area of Sullivan and Glasgow. The CI further stated that he observed defendant hide a portion of the crack cocaine throughout the residence at 5315 Terry.

Det. Liston and Det. William Noonan responded to Terry and Union Avenues to conduct a surveillance on 1/25/05 at approximately 11:00 A.M. He observed defendant leave the Terry residence and enter the yellow Cadillac bearing Missouri License Number 635WLK. They conducted a moving surveillance. Defendant drove west from 5315 Terry then north on Abner. Det. Liston then observed the Cadillac travel east on St. Louis Avenue to Kingshighway. He drove north on Kingshighway toward Natural Bridge and onto the White Castle parking lot. After approximately five minutes, defendant drove east on Natural Bridge from the parking lot. It should be noted he never entered the restaurant or went through the drive-through. Defendant continued driving east on Natural Bridge to Glasgow, then south on Sullivan and parked in front of 2915 Sullivan. Det. Liston observed defendant exit the vehicle and walk to the rear through the breeze way between 2917 and 2915 Sullivan. He then terminated the surveillance. On January 25th at approximately 2:00 P.M. Det. Liston conducted a computer check of Samuel Brown. This check revealed no active wanteds or warrants. It also revealed that Samuel Brown is documented violent offender. Recognizing Samuel Brown as the possible subject of his surveillance at 5315 Terry and based on all of the above information and observations, Det. Liston requested a Search Warrant for the residence at 5315 Terry.

Based on the information contained in the Application and Affidavit, Judge McCullin found probable cause and signed a Search Warrant for 5315 Terry, Apartment B, Second Floor. Gov. Ex. A.[2]

It is to be noted that Det. Liston's only information that 5315 Terry was defendant's residence was from the CI and his surveillances. He did not check utility or other similar records. In addition, the CI said defendant turned powder cocaine into crack cocaine at the Terry residence and then sold it in the area of Glasgow and Sullivan. This does not completely mesh with the clear implication of drug sales to the short term visitors that were observed at the residence during surveillances.

The Warrant was executed on January 28, 2005. Det. Liston testified that as the Search Team approached the residence on Terry, they saw defendant enter his yellow Cadillac and travel west on Terry, north on Abner and east on St. Louis to Kingshighway. Prior surveillances had resulted in the observation of defendant traveling the same route. Det. Liston and other Officers stopped the Cadillac and informed defendant (the driver) that they had a Search Warrant for his residence. It is approximately one-half mile from the Terry residence to the location of the stop. Defendant responded that the Officers could search him and his car and said that he was on his way home to 2917 Sullivan. They searched his car and nothing of evidentiary value was found. They then returned to 5315 Terry. Defendant was not advised of his <u>Miranda</u> Rights nor was he questioned.

When they arrived at 5315 Terry, defendant spontaneously stated "There is nothing in there but a rifle and a little pistol I got to protect myself." The Officers asked him for the key to the residence and he produced it. Using defendant's key, they entered the residence and executed the Search Warrant. There were two females present in the residence. Det. Liston could not recall if defendant went back into the Terry residence or remained in the police car the entire time. The Return and Inventory indicates that the officers seized a .22 caliber long rifle, two baggies of green

---

[2]     The date on the Search Warrant is November 25, 2005. Det. Liston admitted that he made a typographical error.

vegetation, $500 in various denominations of U.S. currency, a digital scale, and live .22 and .357 caliber rounds of ammunition. In addition, they took photographs of the location of the items seized. Gov. Ex. A. No pistol, no drug transaction records and no safes were located. Det. Liston had no information or photographs to establish that the north bedroom in which the rifle was located was defendant's bedroom.

## CONCLUSIONS OF LAW

1. **Search Warrant**[3]

---

[3]     It is not at all clear that defendant has standing to challenge the search. As pointed out in United States v. Sanchez, 943 F.2d 110, 113 n.1 (1st Cir. 1991), the use of the word "standing" is convenient but somewhat imprecise. The Supreme Court has indicated in Rakas v. Illinois, 439 U.S. 128 (1978), that matters of standing in the context of searches and seizures actually involve substantive Fourth Amendment law. See also Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469, 472 (1998) ("in determining whether a defendant is able to show a violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'"quoting Rakas.) Standing is not to be analyzed apart from the merits, rather a defendant is required to prove a legitimate expectation of privacy as a prerequisite to challenge unlawful police conduct. Sanchez, 943 F.2d at 113 n.1.

Fourth Amendment rights may not be asserted vicariously and thus it must be determined whether the defendant had a legitimate expectation of privacy in the area searched. United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994), citing Rakas v. Illinois, 439 U.S. 128, 138-44 (1978). The defendant has the burden of proof on the issue of his reasonable expectation of privacy. United States v. Kiser, 948 F.2d 418, 423 (8th Cir. 1991), cert. denied, 112 S.Ct. 1666 (1992). If a defendant cannot prove a sufficiently close connection to the object or place searched, he has no standing to claim the search was illegal. United States v. Sanchez, 943 F.2d 110, 113 (1st Cir. 1991). The Eighth Circuit in Gomez, 16 F.3d at 256, has cited with approval a seven-part test for determining standing:

Ownership, possession and/or control of the area searched or items seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or non-existence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. Sanchez, 943 F.2d at 113.

Applying this test to the present case, defendant Brown may lack standing to challenge the search. There is no evidence that defendant owned, possessed, or controlled the residence on Terry. He may have been merely a frequent visitor. The only information from the CI is that defendant turned powder into crack cocaine "at his residence" on Terry. Defendant said he lived on Sullivan and his car was registered to the address on Sullivan. Defendant said the officers would find a rifle and indeed they did. There is no evidence of defendant's historical use of the residence except his three visits observed in the surveillances and the CI's statement. There is evidence of defendant's ability to regulate access because he had a key to the Terry residence and gave it to the officers. Defendant presented no evidence of his subjective expectation of privacy and it is certainly questionable whether it is objectively reasonable. Applying the seven part test to defendant's standing to challenge the search, the court find the factors to be in equipoise. The court will assume without

Search warrants to be valid must be based on a finding by a neutral detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband or a person for whose arrest there is probable cause may be found in the place to be searched. Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967); Fed.R.Crim.P. 41. The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause is "a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965). Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. Gates, 462 U.S. at 230. The duty of the reviewing judge "is simply to ensure that the [issuing judge] had a `substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238-39, quoting Jones v. United States, 362 U.S. 257, 271 (1960). Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference. Gates, 462 U.S. at 236. The affidavit presented in the instant case clearly contains the "fair probability" that evidence, instrumentalities or fruits of a crime or contraband would be found at the Terry address. The facts set out above show that there was a substantial basis for concluding that probable cause existed.

The court acknowledges, however, that this Affidavit could fall into the category of a "bare bones" affidavit. See United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995) (holding totality of circumstances sufficient to find probable cause to support issuance of search warrant where CI told affiant police officer that defendant was recently released convicted murder who possessed prohibited firearms at his home and officer verified and corroborated defendant's address and parole status). The court finds that in the present case, based on the totality of the circumstances,

deciding, for purposes of this Recommendation only, that defendant has standing to challenge the search.

there was probable cause to believe that contraband and the instrumentalities of crime would be located at the subject residence on Terry.  <u>Murphy</u>, 69 F.3d at 240.

"Nevertheless, reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause" and thus the Supreme Court has concluded that the issuing judge's determination be given "great deference."[4]  <u>United States v. Leon</u>, 468 U.S. 897, 914 (1984), <u>citing</u> <u>Spinelli v. United States</u>, 393 U.S. 410, 419 (1969).

"Even if the warrant application was supported by more than a `bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances."  <u>Leon</u>, 468 U.S. at 915, <u>citing</u> <u>Gates</u>, 462 U.S. at 238-39.

In the present case, even if the district court should determine that there were insufficient facts set out in the affidavit and that the issuing judge relied on the "bare conclusions of others," <u>Gates</u>, 462 U.S. at 239, the evidence seized pursuant to the search of the residence should not be suppressed.

The exclusionary rule is not designed to punish the errors of judges and magistrates.  <u>Leon</u>, 468 U.S. at 916.  The Supreme Court has clearly recognized that the prosecution should not be barred from using in its case-in-chief evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.  <u>Leon</u>, 468 U.S. at 900.

---

[4]        In assessing the deference to be accorded a magistrate's finding of probable cause, the <u>Leon</u> Court adopted a four-part test:  first, there may be an inquiry into the knowing or reckless falsity of the affidavit on which the determination was based.  <u>Franks v. Delaware</u>, 438 U.S. 154 (1978); second, there must be insistence that the magistrate perform his "neutral and detached" function and not serve as a rubber stamp for the police.  <u>Aguilar v. Texas</u>, 378 U.S. 108, 111 (1964); third, the warrant must be examined for facial deficiency, that is whether it is lacking in detail as to the place to be searched or the effects to be found; and fourth, the magistrate must have a substantial basis for the determination of the existence of probable cause.  <u>Gates</u>, 462 U.S. at 239. Judge McCullin's finding of probable cause passes each part of this four-part test:  there is no evidence of knowing or reckless falsity in the affidavit or that Judge McCullin was anything other than neutral and detached; the warrant was clear and detailed as to the place to be searched and the objects of the search; and, the court has found that there is a substantial basis for Judge McCullin's finding of probable cause.

Here, Det. Liston's Affidavit states that the CI was one that he and other officers had used before and whose information proved reliable, resulting in two narcotics and gun related arrests and warrants issued. Det. Liston verified the owner of the yellow Cadillac driven by "Sam" was Samuel Brown. He obtained pedigree information and a photograph which the CI verified was Sam. Det. Liston conducted surveillance on three occasions for an hour each and saw heavy, short term, foot and vehicular traffic to the Terry address.

"In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Leon, 468 U.S. at 926; United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995) (even if facts in affidavit did not give rise to probable cause, officers acted in good faith based on issuance of warrant and specific information contained therein) cert. denied, 516 U.S. 1139 (1996); United States v. Smith, 63 F.3d 766, 769 (8th Cir. 1995) (search warrant not facially invalid and contained sufficient facts that officers could have executed it with objective good faith reliance on probable cause determination of magistrate judge), cert. denied, 516 U.S. 1063 (1996); United States v. Skorniak, 59 F.3d 750, 754-55 (8th Cir. 1995) (officers' reliance on magistrate's probable cause determination was objectively reasonable and evidence seized came within the good-faith exception to the exclusionary rule regardless of whether there was probable cause, given the affidavit's detailed information about the extensive investigation and defendant's failure to contend the officers did not act in reasonable good faith manner) 516 U.S. 980 (1995); United States v. Frangenberg, 15 F.3d 100 (8th Cir.), cert. denied, 513 U.S. 856 (1994) (although whether the search warrant was supported by probable cause was open to serious debate, court took into account the knowledge that an officer in the searching officer's position would have possessed in evaluating objective reasonableness of officer's reliance).

Therefore, in the alternative, even if the trial judge should find probable cause for the search of the Terry residence lacking, the executing officers acted in objectively reasonable reliance on a warrant issued by a neutral magistrate. Murphy, 69 F.3d at 241, citing United States v. Gibson, 928

F.2d 250, 253 (8th Cir. 1991) citing United States v. Leon, 468 U.S. 897, 922 (1984). The seized evidence should not be suppressed.

### 2. Stop of Defendant

The existence of a search warrant for a residence provides an objective justification for temporary detention of an occupant of the residence. Michigan v. Summers , 452 U.S. 692, 703 (1981). A neutral judicial officer has determined that police have probable cause to believe that the law was being violated in the house and has authorized "a substantial invasion of the privacy of the persons who reside there." Id. at 701. The detention of one of the residents while the premises are searched is less intrusive than the search itself and is permitted. Id.; United States v. Fullwood, 86 F.3d 27, 29 (2nd Cir. 1996) (permissible to require subject to reenter his home and to handcuff him while search conducted pursuant to valid search warrant).

There are three legitimate law enforcement interests that provide substantial justification for detaining an occupant:  "preventing flight in the event incriminating evidence is found"; "minimizing the risk of harm to the officer"; and facilitating "the orderly completion of the search," as detainees' "self-interest may induce them to open locked doors or locked containers to avoid the use of force." Summers, 452 U.S. at 702-703. Here, the stop and brief detention of defendant during the search was legally permissible and no Fourth Amendment violation occurred. See Muehler v. Mena, 125 S.Ct. 1465, 1469-70 (2005).

### 3. Defendant's Statements

When he was initially stopped and informed that the Officers had a Search Warrant for his residence, defendant spontaneously stated that they could search his person and his car. When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver of the rights granted by Miranda v. Arizona, 384 U.S. 436 (1966). Assuming without deciding that defendant was in custody,  in addition to the requirement of custody, the defendant must also be interrogated for Miranda to apply. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Interrogation is "express questioning or its functional equivalent." Rhode

Island v. Innis, 446 U.S. 291, 300-01 (1980). A spontaneous statement by a person in custody does not warrant suppression. United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000) (Miranda not applicable because defendant's statement was spontaneous and not in response to questioning by officer). In fact, "the Supreme court in Miranda expressly stated that '[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admission is not affected by our holding today.'" United States v. Butzin, 886 F.2d 1016, 1018 (8th Cir. 1989) quoting Miranda v. Arizona, 384 U.S. 436, 478 (1966). Here, defendant's statement was not the result of questioning and should not be suppressed.

Defendant also made a spontaneous statement when he and the officers arrived at the residence on Terry. Defendant said without any questioning, that there was nothing there except a rifle and a little pistol. As noted above, a spontaneous statement is not dependent on Miranda warnings to be admissible. Therefore, defendant's statements should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Statements be **DENIED.** [Doc. 19]

**IT IS FURTHER RECOMMENDED** that defendant's Motion to Suppress Physical Evidence be **DENIED.** [Doc. 20]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this  22nd  day of June, 2005.